# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

N.S., *by and through his Parent (J.S.)*, **and**      )
S.T., *by and through his Parents (M.T. and M.T.)*, )
                                           )
       **Plaintiffs,**                )
                                           )
**v.**                                     )      **Case No. 3:16-cv-0610**
                                         )      **Judge Aleta A. Trauger**
**TENNESSEE DEPARTMENT OF**     )
**EDUCATION, KNOX COUNTY**       )
**BOARD OF EDUCATION, and KNOX**   )
**COUNTY,**                               )
                                         )
       **Defendants.**             )

## MEMORANDUM

Pending before the court are two Motions to Change Venue: (1) a motion filed by defendant Knox County Board of Education ("KCS") (Docket No. 5), to which the plaintiffs have filed a Response (Docket No. 7); and (2) a motion filed by defendant Knox County (Docket No. 18), to which the plaintiffs have filed a Response (Docket No. 28). Also pending before the court are three Motions to Dismiss: (1) a motion filed by KCS (Docket No. 6), to which the plaintiffs have filed a Response (Docket No.10); (2) a motion filed by defendant Tennessee Department of Education ("TDOE") (Docket No. 11), to which the plaintiffs have filed a Response (Docket No. 14), TDOE has filed a Reply (Docket No. 17), the plaintiffs have filed a Sur-Reply (Docket No. 22), and TDOE has filed a Response to the Sur-Reply (Docket No. 25); and (3) a motion filed by Knox County (Docket No. 19), to which the plaintiffs have filed a Response (Docket No. 27). For the reasons discussed herein, the pending motions will all be denied.

<u>**BACKGROUND**</u>[1]

According to the Complaint in this action (Docket No. 1), the plaintiffs are minor children with autism and other significant developmental disabilities, both of whom reside in Knox County and attend (or have attended) a number of KCS schools, which are overseen by TDOE. The defendants are all in receipt of federal funding and, therefore, legally obligated to provide the plaintiffs with a free appropriate public education ("FAPE"). The Complaint centers on the allegation that KCS faculty and staff members have improperly misused and overused isolation and restraint techniques on children with disabilities, including the plaintiffs, and that the defendants have failed to take steps to mitigate this problem. According to the Complaint, the defendants are in direct violation of Tennessee's statutory mandate to reduce the use of restraint and isolation and to develop alternative positive behavioral interventions and supports as well as specific TDOE policies regarding the use of isolation and restraint.

The Complaint specifically alleges that both of the plaintiffs, who have been given Individualized Education Plans ("IEPs") and receive special education services through KCS, have been subjected to numerous unnecessary and improper incidents of isolation and restraint at a number of different KCS schools they have attended. In many instances, according to the Complaint, these incidents of isolation or restraint were not accompanied by requisite parental notifications, were not properly documented, and were implemented without any attempt to employ alternative de-escalation strategies. In addition, the records of incidents which were recorded include only a description of the child's behavior that purportedly necessitated the use of the isolation or restraint but do not include any information about the antecedent factors that triggered the child's behavior. Upon inquiry, the Complaint alleges, the plaintiffs' parents were

---

[1] For purposes of the currently pending Motions to Dismiss, all facts in the Complaint are taken as true and viewed in the light most favorable to the plaintiffs.

informed by KCS employees that TDOE had instructed KCS not to record this information. The Complaint alleges, however, that gathering this information is critical for the development of strategies that would eliminate behavioral outbursts among children with disabilities and, in turn, obviate the need for isolation or restraint.

The Complaint further alleges that plaintiff N.S. was subjected to improper incidents of isolation that caused him to be at risk for physical injury, including an incident where he was unsupervised in an area with electrical cords and another incident in which he was unsupervised and ran out of the school building and into the road. These incidents, in conjunction with the general overuse of isolation and restraint throughout KCS, allegedly caused N.S.'s behavior at school to worsen over time, resulting in a number of transfers between KCS schools, a period of homebound schooling, and other emotional injuries including his fearfulness to return to school. Ultimately, his mother was forced to withdraw him from public school, causing her distress and leaving her to independently bear the responsibility and expense for his education. Plaintiff S.T. likewise suffered physical injury during one incident of allegedly abusive use of a restraint in a KCS school. The Complaint alleges that S.T.'s parents were not notified of the incident but that the teacher involved wrote "Another f***ed up day in special ed" on her publicly viewable Facebook page. (Docket No. 1 ¶ 21.) Despite the parents' complaints about this incident, no disciplinary action was taken. Again, as a consequence of this incident and the general overuse of isolation and restraint, S.T. was transferred through a number of KCS schools, suspended, and placed for a period of time on homebound schooling, causing emotional trauma to S.T. and distress to his family.

According to the Complaint, the misuse and overuse of isolation and restraint is a systemic problem throughout KCS, evidenced by specific publicized incidents and a generally

disproportionate number of recorded incidents of isolation or restraint, as compared to other school districts in the region of comparable size. Moreover, the Complaint alleges, many of these incidents involve isolation in smaller areas or for longer periods of time than is permitted under TDOE's own internal regulations. The Complaint further alleges that KCS employs an overly broad definition of "emergency" in order to implement isolation and restraint techniques as a matter of convenience, where TDOE policy permits their use in emergency situations only. Finally, the Complaint alleges that isolation and restraint are routinely used throughout KCS without proper documentation or parental notification as required by TDOE. According to the Complaint, TDOE neither enforces these policies nor issues consequences for KCS' noncompliance. As a specific example, the Complaint alleges that KCS has been implementing improper isolation in inadequately sized areas fenced in by gym mats and referring to these events as "time outs" rather than "isolation," to avoid complying with TDOE policy, and that TDOE has been made aware of this issue but taken no corrective action.

Finally, according to the Complaint, the data on the use of isolation and restraint has not been properly collected by TDOE or reported to the Advisory Council for the Education of Students with Disabilities (the "Council"). The Council, in turn, has made no recommendations as to how to mitigate the alleged problems. Minutes of meetings between TDOE and the Council show that discussions of this issue have been avoided or postponed and, as a consequence, no action has been taken by TDOE to reduce or eliminate isolation and restraint or to enforce TDOE's policies governing their use.

## PROCEDURAL HISTORY

The plaintiffs initiated this action on March 16, 2016, bringing claims against the defendants for violations of Tile II of the Americans with Disabilities Act, 42 U.S.C. §12101 e*t*

*seq.* (the "ADA"); the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e)(2) (the "IDEA"); and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). (Docket No. 1.) The Complaint also alleges that the defendants violated the Special Education Behavior Supports Act, Tenn. Code Ann. §49-10-1304 *et seq.* (the "SEBSA") as grounds to support the plaintiffs' IDEA claims. The plaintiffs seek damages, injunctive relief, and attorney's fees and costs.

On April 18, 2016, KCS filed a Motion to Change Venue, seeking to transfer this action to the United States District Court for the Eastern District of Tennessee at Knoxville under 28 U.S.C. § 1404. (Docket No. 5.)

Also on April 18, 2016, KCS filed a Motion to Dismiss this action on two grounds: 1) the plaintiffs' failure to administratively exhaust all claims under 20 U.S.C. § 1415; and 2) with respect to the ADA and Section 504 claims, the plaintiffs' failure to state a claim under Rule 12(b)(6). (Docket No. 6.)

On April 19, 2016, the plaintiffs filed a Response in opposition to KCS's Motion to Change Venue. (Docket No. 7.)

On April 20, 2016, the plaintiffs filed a Response in opposition to KCS's Motion to Dismiss. (Docket No. 10.)

On April 21, 2016, TDOE filed a Motion to Dismiss, accompanied by a Memorandum in support. (Docket Nos. 11 and 12.) TDOE, like KCS, argues that the plaintiffs are obligated to administratively exhaust all claims under 20 U.S.C. § 1415 and have failed to state a Section 504 or ADA claim under Rule 12(b)(6). Finally, TDOE argues that the plaintiffs' claims under the SEBSA should be dismissed because the SEBSA does not create a private right of action and because, even if it did, TDOE would be immune.

On April 26, 2016, the plaintiffs filed a Response in opposition to TDOE's Motion to Dismiss, along with a number of attachments. (Docket No. 14.) In this Response, the plaintiffs concede that they are not bringing a separate cause of action under the SEBSA but raise allegations of SEBSA violations only in support of their IDEA claims.[2]

On May 10, 2016, TDOE filed a Reply in further support of its Motion to Dismiss. (Docket No. 17.)

On May 11, 2016, Knox County filed a Motion to Change Venue, incorporating by reference KCS' motion and adding some additional related arguments. (Docket No. 18.) Neither KCS nor Knox County has identified any specific individuals who would arguably be either substantially inconvenienced by this action proceeding in the Middle District of Tennessee or outside of the court's subpoena power.

Also On May 11, 2016, Knox County filed a Motion to Dismiss, again incorporating by reference KCS' Motion to Dismiss and raising some additional related arguments. (Docket No. 19.)

On May 12, 2016, with leave of court, the plaintiffs filed a Sur-Reply to TDOE's Motion to Dismiss. (Docket No. 22.) On May 18, 2016, with leave of court, TDOE filed a Response to the plaintiff's Sur-Reply. (Docket No. 25.)

On May 19, 2016, the plaintiffs filed a Response in opposition to Knox County's Motion to Dismiss (Docket No. 27) as well as a Response in opposition to Knox County's Motion to Transfer Venue (Docket No. 28). Both Responses to Knox County's motions incorporate by

---

[2] For this reason, the court will not address any independent causes of action arising directly under the SEBSA and will treat the allegations regarding violations of the SEBSA as relevant only to support the plaintiffs' IDEA claims.

reference the plaintiffs' Responses to KCS' Motion to Change Venue and Motion to Dismiss, respectively.[3] (Docket No. 28.)

**MOTIONS TO CHANGE VENUE**

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). In ruling on a motion to transfer venue, a district court should consider case-specific factors, such as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136-37 (6th Cir. 1991)); accord *Kerobo*, 285 F.3d at 557.

The Sixth Circuit has suggested that relevant factors to consider include: 1) the convenience of the parties and witnesses; 2) the accessibility of evidence; 3) the availability of

---

[3] In their Responses to both Knox County motions, the plaintiffs argue that Knox County should not have been permitted to file additional motions beyond those already filed by KCS, and that the court should not consider Knox County's briefing, because Knox County and KCS are represented by the same counsel and are sued as one entity for purposes of this action (the "Local Education Agency" as defined by the IDEA). The plaintiffs assert that the only reason they named both KCS and Knox County as defendants to this action is because the defendants refused to stipulate as to which is the proper party to be named. There have been no motions or briefings filed on this issue. For purposes of the currently pending motions, the court need not resolve the question as to which party is the properly named local education agency, or which party or parties will have ultimate liability for the conduct alleged in the Complaint, and the court will consider the arguments raised in the briefings by both KCS and Knox County.

process to make reluctant witnesses testify; 4) the costs of obtaining willing witnesses; 5) the practical problems of trying the case most expeditiously and inexpensively; and 6) the interests of justice. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). The moving party bears the burden of establishing that these factors weigh in favor of transferring venue. *See, e.g., Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573; *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 097 (M.D. Tenn. 1996). Ordinarily, "unless the balance is *strongly* in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese*, 574 F.3d at 320 (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)) (emphasis added).

As KCS and Knox County have pointed out, when plaintiffs do not reside in their chosen forum, their choice should be given less weight than would otherwise be the case. This does not mean, however, that the plaintiffs' choice should be given *no* weight; nor does it negate the fact that it is the moving defendant's burden to demonstrate that other factors weigh in favor of transfer. *See Ajose v. Interline Brands, Inc.*, No. 3:14-cv-1797, 2015 WL 5773080, at *3 (M.D. Tenn. Sept. 30, 2015) ("Perhaps Defendant's most compelling argument is that the Plaintiffs' forum choice should not receive deference because Plaintiffs have no ties to the Middle District of Tennessee. . . . Yet the absence of deference does not alone defeat the Plaintiffs' forum choice; Defendant still bears the burden on a Section 1404(a) motion."). In this action, even giving limited weight to the plaintiffs' choice of forum, KCS and Knox County have simply not met their burden of showing that this action should be transferred to the Eastern District.

KCS and Knox County argue that this action belongs in Knoxville because it arises primarily from allegations of restraint and isolation procedures that were used on the plaintiffs in KCS schools. KCS and Knox County, however, do not address the allegations involving state-

level policy decisions and practices that form the crux of the plaintiffs' Complaint and provide the basis for the claims against TDOE also at issue in this action. Similarly, Knox County argues that the injuries took place solely in KCS schools and that this supports a policy interest in adjudicating the matter in Knoxville, citing *In re Aredia and Zometa Products Liability Litigation*, 2008 WL 686213, 3:06-1760 (M.D. Tenn. March 6, 2008). (Docket No. 18-1 p. 2.) The court is not persuaded, however, that because the specific isolation and restraint that the plaintiffs suffered took place in Knoxville, the injuries can be said to have been wholly sustained there, when this action involves allegedly injurious policies set by TDOE. Indeed, in *Aredia*, which involved alleged injuries from pharmaceutical use, the court considered not just where the plaintiffs were located when the injuries developed, but where the pharmaceutical in question was marketed, prescribed, and administered. The court ultimately found that transfer was warranted because none of these acts took place in the plaintiffs' choice of forum, which, therefore, held no connection to the facts giving rise to the action. *Aredia*, 2008 WL 686213. This case, to the contrary, has a clear connection to the Middle District, as evidenced by the allegations against TDOE, which is based in Nashville, the state capitol.

Next, KCS and Knox County raise the general argument that many of the likely witnesses in this case – KCS employees such as school administrators, principals, teachers, and other staff members who have worked with the plaintiffs – are located in Knox County and will, therefore, be inconvenienced by having to travel to Nashville and leave their classrooms for longer periods of time than would be necessary, were the case to be tried in Knoxville. KCS and Knox County have not, however, provided a preliminary witness list. Nor have they actually named any particular witnesses, or alleged any specific facts, to support an argument that any witness to the action (let alone significant witnesses) would be unreasonably inconvenienced by having to

attend trial in Nashville or would be outside of the court's subpoena power. Knoxville is only a three-hour drive from Nashville, and the two cities are within the same state. Under Rule 45, KCS witnesses – who are employees of a party to the action – are likely subject to the subpoena power of the Middle District, which is within the state of Tennessee where they are employed. *See* Fed. R. Civ. P. 45(c)(1)(B) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within the state where the person resides, is employed, or regularly transacts business in person, if the person is a party or a party's officer; or is commanded to attend a trial and would not incur substantial expense.")

Moreover, other than asserting that TDOE has offices in Knoxville, KCS and Knox County have not addressed the fact that witnesses to this action will likely also include employees of TDOE and others involved in setting state-wide policy, who may be based in Nashville. It is unknown at this time whether particular individuals who are affiliated with TDOE and who will be likely witnesses in this matter are located in Nashville or Knoxville (or elsewhere) or will be inconvenienced by either location. KCS and Knox County, however, bear the burden on this motion to outweigh the plaintiffs' choice of forum, and they have failed to provide any specific factual information in favor of transfer. While the court recognizes that it is highly likely that many witnesses in this action would find it more convenient to appear in Knoxville than Nashville, this fact alone is not sufficient to find that, on the whole, the convenience of witnesses weighs in favor of transfer, given the dearth of knowledge about the numbers of potential witnesses from KCS as compared to the numbers of potential witnesses from TDOE or their locations. As for the convenience of parties, this factor likewise does not lean in favor of transfer. While TDOE has neither joined nor opposed their co-defendants' motions to transfer this action to the Eastern District, the court notes that TDOE is based in

Nashville and, therefore, should not be inconvenienced by participating in this action in the Middle District. To the contrary, TDOE's presence as a party in this action leans in favor of retaining the action here. The plaintiffs have selected this forum. Any inconvenience to KCS or Knox County does not outweigh the interests of the other parties.

Finally, KCS and Knox County argue that, because the allegations against TDOE involve only *inaction*, in terms of failing to set policies that would reduce isolation and restraint, TDOE and its witnesses are somehow less significant to this action and, therefore, their interests deserve less weight in this analysis. First, KCS and Knox County misstate the allegations at issue, which clearly include affirmative actions by TDOE, such as informing KCS not to collect data on factors that trigger student behavior leading to isolation or restraint. In addition, KCS and Knox County overlook the fact that resolving this matter clearly hinges on understanding the policies and practices implemented by TDOE at a state level. Knox County attempts to differentiate this case from a former similar case before this court, *W.H. v. Tenn. Dep't. of Educ.*, 2016 WL 236996, 3:15-1014 (M. D. Tenn. Jan. 20, 2016), in which this court retained venue, by arguing that the instant case –unlike *W.H.* – is not truly about centralized policies but about individual instances of restraint and isolation that took place in KCS schools. The court does not accept this version of the Complaint. While the facts may ultimately show that there has been no centralized systemic misconduct, this action – *as alleged* – is primarily about both the misuse and overuse of restraint and isolation in KCS *and* the policies and practices of TDOE and the state that may have improperly caused the overuse of restraint and isolation or allowed it to continue unchecked.

For these reasons, KCS and Knox County's Motions to Transfer Venue will be denied.

<u>**MOTIONS TO DISMISS**</u>

**I.**     <u>**Legal Standard**</u>

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

**II.**     <u>**Analysis**</u>

Before examining the primary substantive grounds for the defendants' Motions to Dismiss, the court turns to a defense raised perfunctorily for the first time in TDOE's Reply

brief: that TDOE is a separate entity from both the Tennessee State Board of Education (the "Board") and the Council and is, therefore, not liable for the statutory obligations of the Board or the Council that are enumerated in the SEBSA and referenced in the Complaint as the basis for the plaintiffs' IDEA claims. As noted above, the Complaint contains allegations that TDOE has violated the SEBSA by not taking concrete actions to reduce or eliminate the use of isolation and restraint in public schools. TDOE now appears to suggest that, to the extent that the claims against it are based on this SEBSA mandate, the wrong defendant has been named. TDOE has not, however, made a formal motion before the court to substitute a different agency as the proper defendant in this action.

Under Tennessee law, the TDOE, the Board, and the Council are three separate entities. Tenn. Code Ann. § 49-1-201 *et seq.* (outlining the duties of TDOE and providing that it is headed by the Commissioner of Education (the "Commissioner")); Tenn. Code Ann. § 49-1-301 *et seq.* (outlining the duties of the Board and providing that it shall be composed of nine appointed members who are not employees of the federal, state, or local government); Tenn. Code Ann. § 49-10-105 (creating the Council; providing that it shall consist of appointed members, including individuals with disabilities, the parents of children with disabilities, and representatives of state and local agencies; and providing that it "shall advise and consult with . . . the [Commissioner], the [Board]," and others). The Tennessee Code, however, also notes that, "[f]or administrative purposes, the [Board] shall be housed in the department of education, but this shall not allow the [Commissioner] any administrative or supervisory authority over the [B]oard or its staff." Tenn. Code Ann. §49-1-301(e). In addition, the Commissioner "is responsible for the implementation of laws or policies established by the . . . [Board]" and "shall attend all meetings of the [Board] and may speak at the meetings and make recommendations."

Tenn. Code Ann. § 49-1-201(a) and (b).  Finally, the Commissioner shall "see that the school laws and regulations of the [Board] are faithfully executed" and shall "prepare and present to the [Board] for its approval, disapproval, or amendment rules and regulations that are necessary to implement the policies, standards, or guidelines of the [Board] or the *education laws of the state*."  Tenn. Code Ann. § 49-1-201(c)(5) and (c)(20) (emphasis added).

The SEBSA delineates the duties of TDOE, the Board, the Council, and the local education agencies, with respect to the use of isolation and restraint, as follows:

(a) Each school shall maintain all records of isolation and restraint.

(b) On a semiannual basis, using existing student-level data collection systems to the extent feasible, each school shall submit a report to the local education agency that includes: (1) the number of incidents involving the use of isolation and restraint since the previous semiannual report; (2) the number of instances in which the school personnel imposing physical restraint or isolation were not trained and certified; (3) any injuries, deaths, or property damage that occurred; (4) the timeliness of parental notification; and (5) demographic information to determine whether disproportionate use of these interventions exists.

(c) The local education agency shall use the information obtained from records of isolation and restraint in developing its behavior intervention training program.

(d) The local education agency shall submit information to [TDOE] each year on the use of isolation and restraint in the school district.

(e) Annually, this information shall be reported to the [Council] pursuant to § 49-10-105.  This information must also be made readily available to the public.  The [C]ouncil shall use this information to report annually to the [Board] with recommendations to reduce the use of isolation and restraint in public education programs.  The [Board] shall use these recommendations as well as data, documentation and reports to establish policy or strategies or both to reduce or eliminate the use of isolation and restraint in schools.

(f) The [Board], in consultation with [TDOE] . . . shall promulgate rules and regulations concerning the use of isolation or restraint with students who receive special education services so that isolation or restraint is not used when such procedures are unsafe, unreasonable, or unwarranted.

Tenn. Code Ann. § 49-10-1306.  TDOE points out that its only express role under this scheme is to collect data from the local agencies and pass it on to the Council, which, in turn, makes recommendations to the Board, and that it is the Board, not TDOE, that is solely responsible for establishing policies to reduce the use of isolation and restraint.  Given that TDOE is also required to consult with the Board on rules and regulations around the use of isolation and restraint, combined with TDOE's general statutory obligation to participate in creating and implementing Board policies, it is not entirely clear, however, that TDOE's obligations are as limited under the SEBSA as it argues.  At this stage of the litigation, the record is not sufficiently developed for the court to ascertain whether TDOE is liable for any acts and omissions of the Board that violate the SEBSA.  Nor can the court preclude the possibility that TDOE has failed to comply with its own obligations under the SEBSA.[4]

Moreover, the court notes that, while allegations of SEBSA violations are raised in the Complaint, it is not at all clear that they form the entire basis of the plaintiffs' IDEA claims.  Even absent a showing that TDOE has violated the SEBSA, the plaintiffs may still be able to establish that TDOE has failed to provide them with a FAPE, in light of the allegations about

---

[4] TDOE also argues that, even if a violation of the SEBSA can be shown, a SEBSA violation cannot form a basis of an IDEA claim because the SEBSA cannot expand TDOE's obligations under the IDEA.  (Docket No. 17 p. 3.)  To support this position, TDOE cites *Doe By and Through Doe v. Board of Education of Tullahoma City Schools*, 9 F.3d 455 (6th Cir. 1993).  (*Id.*)  In fact, however, the Sixth Circuit in *Doe* reached the exact opposite conclusion, stating: "it is settled that even if a school district complies with federal law, it may still violate the [IDEA] if it fails to satisfy more extensive state protections that may also be in place."  *Doe*, 9 F.3d at 457 (internal citations omitted).  In *Doe*, the Sixth Circuit found that the state statute at issue simply did not create any obligations above and beyond those enumerated in the IDEA, but the Sixth Circuit was clear that, if the state statute had done so, the IDEA could have been invoked for enforcement of the state legislation.  *See id*. at 457-58.  The SEBSA clearly creates specific obligations related to reducing the use of isolation and restraint that go beyond the basic scope of the IDEA's requirements.  Accordingly, under *Doe*, these provisions are enforceable under the IDEA.

TDOE's failure to enforce its own internal policies and failure to address the alleged overuse and misuse of isolation and restraint. The fact that TDOE has allegedly failed to comply with the SEBSA's express mandate to reduce or eliminate the use of isolation and restraint in public schools may provide additional support for the plaintiffs' claims, but determining precisely whether and how this statute directly obligates the TDOE (as opposed to other state entities) is not necessarily the deciding factor in allowing the plaintiffs' IDEA claims against TDOE to proceed.

In response to TDOE's argument, however, the plaintiffs have requested leave to add the Board and the Council as defendants in this action,[5] though the plaintiffs maintain that TDOE is a proper party. The court agrees that, at this time, there is no basis to find that TDOE has been improperly named and notes that, in addition to TDOE being potentially liable for its own actions that allegedly violate the IDEA, TDOE may also be liable for its alleged failure to correct the actions of the local education agencies. For these reasons, the court will allow the plaintiffs to add the Board and the Council as defendants to this action, but the court will not dismiss the claims against TDOE.

The court will now turn to the two primary grounds raised for dismissal of the claims – failure to exhaust and failure to state a claim – and, for purposes of this analysis, the court will

---

[5] TDOE has also raised the argument that neither the Board nor the Council can be proper parties to this action because, unlike TDOE, they are not state educational agencies under the IDEA and, as such, are not tasked with providing a FAPE to students with disabilities. TDOE, thus, essentially appears to argue that no state agency is liable under the IDEA for upholding the SEBSA's mandate to reduce or eliminate the use of restraint and isolation in public schools. The court will not reach this question at this stage of the proceedings, but notes that TDOE's position that the SEBSA is unenforceable through the IDEA because the entities tasked with carrying out its provisions are wholly separate from the entities capable of being sued as state educational agencies under the IDEA appears to be untenable.

not differentiate between the SEBSA obligations imposed on TDOE and those imposed on the Board or the Council.

## I.      <u>Exhaustion</u>

Under the IDEA, state educational agencies – such as TDOE – are required to provide administrative impartial due process hearings for students challenging any matter relating to their receipt of a FAPE. 20 U.S.C. § 1415(b)(6)(f)-(g); 20 U.S.C. § 1415(b)(6)(k). While the IDEA provides for a private right of action, it requires that plaintiffs first exhaust the administrative procedures. 20 U.S.C. § 1415(i); *see also S.E. v. Grant Cnty Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008). The Sixth Circuit has held that the rationale behind this exhaustion requirement is that:

> the IDEA gives the 'primary responsibility . . . for choosing the education method most suitable to the child's needs . . . to state and local educational agencies in cooperation with the parents or guardian of the child.' The federal courts are not the entities best equipped to craft an IEP or remedial substitutes. They are, instead, suited to reviewing detailed administrative records, such as those that would be furnished through due process hearings . . . under the IDEA.

*Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 433-34 (6th Cir. 2006) (quoting *Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 (1982)); *see also Frye v. Napoleon Cmty. Schs.*, 788 F.3d 622, 626 (6th Cir. 2015) (holding that the IDEA "calls for a highly fact-intensive analysis of a child's disability and her school's ability to accommodate her" and that the administrative exhaustion procedures "ensure that the child's parents and educators, as well as local experts, are first in line to conduct this analysis").

The exhaustion requirement for claims brought under the IDEA applies with equal force to claims brought under Section 504 and Title II that arise from the same misconduct that allegedly violates the IDEA. 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the

Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subjections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.") (internal citations omitted); *see also Frye*, 788 F.3d at 625. Administrative exhaustion of these claims, however, is not required "when it would be futile or inadequate to protect the plaintiff's rights." *Donoho ex rel. Kemp v. Smith Cnty. Bd. of Educ.*, 21 F. App'x 293 (6th Cir. 2001) (citing *Covington v. Knox Cnty. Sch. Sys.*, 303 F.3d 912, 915 (6th Cir. 2000); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir.1989)); *see also Honig v. Doe*, 484 U.S. 305 (1988) (holding that a claim under the predecessor statute to the IDEA could proceed in federal court without prior administrative exhaustion where such exhaustion would be futile).

In arguing that the plaintiffs' claims in this action are subject to administrative exhaustion, KCS cites *Mallory ex. rel. BM v. Knox County School District* (2006 WL 3484015, No. 3:06-cv-112 (E.D. TN Nov. 30, 2006)) for the proposition that challenges to incidents of restraint and isolation are challenges to *disciplinary* practices, rather than incidents of abuse and, as such, fall under the IDEA and are subject to exhaustion whether brought as IDEA claims or as claims under the ADA or Section 504. (Docket No. 6.) The court agrees that the claims in this action involving the broad overuse and misuse of isolation and restraint fall within the IDEA's protections.[6] In fact, this appears to be conceded by the plaintiffs in that they have, in fact, brought IDEA claims. The court does not find that exhaustion is unwarranted here because the

_____

[6] The plaintiffs may, however, also have claims that fall outside of the scope of the IDEA (and arise only under the ADA and Section 504) for those specific instances in which they were subject to abuse or neglect in conjunction with the use of isolation or restraint techniques. *See F.H. ex re. Hall v. Memphis City Schs.*, 764 F.3d 638, 643 (citing 20 U.S.C. § 1415(l)).

allegations are outside of the scope of the IDEA.   The court does find, however, that exhaustion

is not required because the allegations are systemic in nature and exhaustion would be futile.  In

fact, *Mallory* – as well as the Sixth Circuit case it cites – *Moore v. Harriman City Schools*, 1994

WL 18021, No. 92-5572 (6th Cir. Jan. 21, 1994) – involved only challenges to specific incidents

involving the plaintiff student, rather than raising any allegations of systemic misuse of overuse

of isolation and restraint.

   As the court held in *W.H.*, administrative exhaustion would be futile here, where the

primary challenge is not to the individual instances in which the plaintiffs were subjected to

isolation or restraint but to the systemic failure of the defendants to take measures that would

mitigate the use of isolation and restraint and replace these procedures with alternative strategies.

The defendants argue that this case is really about the failure to provide the individual plaintiffs

with a FAPE and that, accordingly, the plaintiffs should go through the administrative

procedures for reviewing their IEPs, including the provisions therein for the use of restraint and

isolation.  What the defendants overlook, however, is that, according to the Complaint, the

plaintiffs have been given appropriate IEPs, and the plaintiffs do not challenge their content.

With the exception of the isolated incidents of abusive or negligent restraint or isolation cited in

the Complaint, the plaintiffs do not even assert that all of the incidents of isolation or restraint

that they experienced could have been avoided by individual KCS staff members, given the

current state of educational policies and practices throughout KCS and the state of Tennessee.

Indeed, the Complaint does not even detail the circumstances surrounding the numerous

incidents of restraint and isolation the plaintiffs have allegedly experienced.  Rather, the

Complaint alleges that, had staff members received different types of training, had TDOE's

internal policies been enforced, had parents been notified and involved, and had data been

collected on the antecedent factors that triggered the plaintiffs' dangerous behavior, the context could have been changed, such that the use of isolation and restraint would have been avoided or reduced, sparing the plaintiffs from the cumulative effects of frequent use and misuse of isolation and restraint procedures.

While the defendants are correct that the allegations in this action are texturally different from those at issue in *W.H.*, the court is not persuaded that this significantly changes the final analysis. *W.H.* involved a challenge to a clear and *express* funding policy established by TDOE and implemented by KCS. This case, by contrast, challenges KCS's unofficial practices that allegedly violate state law and TDOE policies, and TDOE's failure to take more proactive measures to enforce its existing policies and to create new policies and strategies. Arguably, the claims against KCS for violating TDOE's already existing policies *could* be administratively exhausted through TDOE. Requiring such exhaustion, however, would require treating the allegations at issue in this action as isolated incidents of restraint and isolation that TDOE should have the opportunity to address piecemeal. Again, this is simply not consistent with the court's reading of the Complaint. While the Complaint alleges a number of incidents of isolation and restraint used on the plaintiffs, the thrust of the Complaint is that all of these incidents resulted, in part, from 1) TDOE's communicated disregard for enforcing its policies as well as widespread implementation of isolation and restraint as a matter of convenience throughout KCS and 2) all defendants' failure to implement alternative policies and strategies. Moreover, it would be impossible to parse the effects on the plaintiffs of any individual isolation or restraint from the alleged cumulative impact of a widespread and pervasive practice. Finally, the express purpose behind the administrative exhaustion requirement – the ability to review educational placements at the local level – does not apply to the issues in this action. The plaintiffs are not asking the

court to conduct a thorough review of all aspects of the plaintiffs' educational needs. They are raising the specific question of whether the defendants have failed to implement measures, in keeping with Tennessee's statutory mandate, that would reduce the use of isolation and restraint in public schools as a matter of system-wide policy and practice.

The court also acknowledges the defendants' concerns that, by avoiding exhaustion through allegations of *inaction* rather than challenges to an express policy, there is a danger that *any* IDEA claim could avoid exhaustion if it is accompanied by the vague allegation that there must have been something the local and state agencies could have done that would have prevented the alleged misconduct. The court finds, however, that this is not the case here. The plaintiffs have pointed to specific examples of actions taken by the defendants (the use of "time out" terminology to replace "isolation" at the local level, instructions not to collect certain types of data at the state level), specific incidents that should have made the defendants aware of a problem (publicized events involving the use of "timeouts," a disproportionate number of incidents of isolation and restraint in KCS as compared to other school districts), evidence that the problem is widespread (although there are only two plaintiffs, they attended a number of schools throughout KCS), and specific state statutory mandates that the defendants have allegedly failed to uphold (as laid out in the SEBSA).

As the court recently held in *W.H.*, the court is persuaded by the Second Circuit holding in *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114-15 (2d Cir. 2004) (acknowledging "the importance of exhaustion in 'textbook' cases presenting issues involving individual children where the remedy is best left to educational experts operating within the framework of the local and state review procedures" but holding that exhaustion was not required because the claims did not challenge the content of the individual IEP but, instead, challenged the school district's

failure to prepare and implement IEPs on a wide-scale basis along with other systemic oversights involving proper notifications to parents and training of staff).  TDOE argues that this case is more akin to the Ninth Circuit case, *Hoeft v. Tucson Unified School District* (967 F.2d 1298 (9th Cir. 1992)).  (Docket No. 12 pp. 7-10.)  In *Hoeft*, the Ninth Circuit held that even allegations of system-wide blanket practices that violate the IDEA are not necessarily sufficient to overcome the exhaustion requirement, where the practices take place at the local level and can be subject to state-level review.  *Hoeft*, 967 F.2d at 1307.  This holding contrasts with the Second Circuit's ruling in *J.S.* that even local-level policies and practices need not be administratively exhausted because of the danger of inconsistent findings and the uncertainty that the administrative process is equipped to handle system-wide adjudications.

Not only is the court, as noted in *W.H.*, persuaded to follow the logic in *J.S.*, the court also notes two critical factors distinguishing this case from *Hoeft*.  First, this case – unlike *Hoeft* – does not *solely* involve local-level practices, but includes clear challenges to state-level conduct.  Second, *Hoeft* involved claims against local educational agencies in Arizona, and the court expressly noted that Arizona provides an alternative administrative process for challenges to school board policies that is separate from the administrative process for disputes centering on individual student IEPs.  It is not clear from the record that, to the extent that local level policies are at issue in this action, any such administrative review procedures are available in Tennessee.

For these reasons the court will not require the plaintiffs to exhaust administrative procedures before proceeding with their claims and will not dismiss any of the claims on this ground.

## II.     Failure to State a Claim

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .".  Title II is nearly identical, with the exception of covering even public services that are not funded by federal financial assistance.  42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity.")  As discussed above, the IDEA expressly provides that plaintiffs may bring a private right of action for denial of a FAPE under Title II and Section 504, as well as under the IDEA itself.  20 U.S.C. § 1415(i); *see also Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 166 (6th Cir. 2003) ("Generally, the  [IDEA], as amended 20 U.S.C. §§ 1400-20, informs a Rehabilitation Act discrimination claim which is buttressed by allegations that a public school district failed to appropriately accommodate a handicapped student's extraordinary educational needs.").

The Sixth Circuit has held, however, that in order to succeed on a Section 504 claim in this context, "more harm is required than a denial of [FAPE]."  *N.L. ex rel. Mrs. C. v. KCS Cnty Schools*, 315 F.3d 688, 695 (6th Cir. 2003).  In particular, the Sixth Circuit has held that, in addition to proving the denial of a FAPE under the IDEA, "the Rehabilitation Act *further requires* that the [plaintiff] must ultimately prove that the defendant's failure to provide [the plaintiff] with a [FAPE] was *discriminatory*.  Surmounting that evidentiary hurdle requires that either *bad faith or gross misjudgment* must be shown before a 504 violation can be made out, at least in the context of the education of handicapped children."  *Campbell*, 58 F. App'x at

167(emphases added) (internal citations omitted); *see also Hill v. Bradley Cnty Bd. of Educ.*, 295 F. App'x 740, 742 (6th Cir. 2008) (holding that there was no Section 504 violation where there was no allegation of "deliberate indifference," which the court defined as "more than a collection of sloppy, or even reckless, oversights").  The Sixth Circuit has expressly held that this element of discriminatory intent applies as well to Title II claims in the education context and that "'[a]part from [Section 504's] limitation to denials of benefits "solely" by reason of disability and its reach of only federally funded – as opposed to "public" – entities, the reach and requirements of both statutes are precisely the same." *S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008) (quoting *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 n. 6 (2d Cir. 2002).

According to the defendants, the plaintiffs have not alleged anything related to the additional element of discriminatory intent necessary to plead a Section 504 or Title II claim.  The court disagrees with this overly narrow reading of the Complaint.  The plaintiffs, in alleging that the defendants have allowed the pervasive misuse and overuse of isolation and restraint on students with disabilities throughout KCS as a matter of convenience, and have taken no action to curb this practice (in express violation of state education law), can easily raise the inference that the defendants have acted in bad faith or with gross misjudgment, in violation of the plaintiffs' rights.  It is clear that the plaintiffs may have a difficult burden to actually prove this additional element of discriminatory intent to a trier of fact, but it is equally clear that the plaintiffs have put forth enough of a foundation in the Complaint that they should have the opportunity to further develop the record and proceed with these causes of action.

TDOE, in particular, argues that it has had no interaction with the plaintiffs and has no statutory obligations to the plaintiffs under the SEBSA (the position that is discussed more fully

above) and, therefore, it cannot be said to have acted with deliberate indifference to the plaintiffs' rights under Section 504 and the ADA. As discussed, above, however, at this stage in the proceedings, the court cannot determine that there is no means by which TDOE can be found to have violated the SEBSA, nor can the court find that TDOE's policies could not have otherwise denied the plaintiffs access to a FAPE under the IDEA. As to whether any such misconduct was carried out with deliberate indifference or gross misjudgment, this is, again, clearly a factual question that requires further development of the record. The Complaint, however, raises sufficient allegations to proceed. TDOE's argument that it had no direct knowledge of the specific incidents of isolation and restraint involving the plaintiffs is irrelevant in light of the allegations that TDOE had knowledge of system-wide problems but chose not to address them. In fact, for the same reasons that the plaintiffs' claims do not require administrative exhaustion, the court finds that the claims have been properly alleged: these claims are not merely challenges to the specific alleged incidents involving the plaintiffs, but are challenges to blanket policies by all of the defendants that created the context in which the plaintiffs were subjected to numerous incidents of restraint and isolation that allegedly could have been avoided.

Accordingly, the court will not dismiss any of the Title II or Section 504 claims under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Motions to Change Venue and Motions to Dismiss will be denied. Also, as discussed above, the court will order that the plaintiffs may amend the Complaint to add the Board and the Council as additional defendants.

An appropriate order will enter.


_____
ALETA A. TRAUGER
United States District Judge