| | |
|---|---|
| **N.S.,** *by and through his Parent (J.S.),* **and** ) | |
| **S.T.,** *by and through his Parents (M.T. and M.T.),* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 3:16-cv-0610** |
| ) | **Judge Aleta A. Trauger** |
| **TENNESSEE DEPARTMENT OF** ) | |
| **EDUCATION, TENNESSEE STATE BOARD** ) | |
| **OF EDUCATION; KNOX COUNTY BOARD** ) | |
| **OF EDUCATION, and KNOX COUNTY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Pending before the court are two motions. The first is a Motion to Strike (Docket No. 69), filed by defendants Knox County and Knox County Board of Education (collectively "the Knox Defendants"), to which the plaintiffs have filed a Response in opposition (Docket No. 75). The second is a Motion to Dismiss for Lack of Rule 12(b)(1) Subject Matter Jurisdiction filed by the Knox Defendants (Docket No. 78), to which the plaintiffs have filed a Response in opposition (Docket No. 79), the Knox Defendants have filed a Reply (Docket No. 81), and both sides have filed Memoranda of supplemental authority (Docket Nos. 84, 90). For the reasons discussed herein, both motions will be denied.

## BACKGROUND & PROCEDURAL HISTORY

This education discrimination action was initially filed on March 16, 2016 against the Knox Defendants and the Tennessee Department of Education (the "TDOE"), bringing claims under 1) Tile II of the Americans with Disabilities Act, 42 U.S.C. § 12101 e*t seq.* ("Title II"); 2) the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(e)(2) (the "IDEA"); and 3)

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). The action is based on allegations that the minor plaintiffs, who are developmentally disabled and in need of special education services, have suffered injuries while enrolled in Knox County schools, which are overseen by the TDOE, due to the Knox Defendants' policy and practice of allowing and promoting the misuse and overuse of isolation and restraint techniques on students with disabilities. (Docket No. 1.) On July 14, 2016, the court issued an Order denying motions by the Knox Defendants and the TDOE to change venue and to dismiss the action for failure to exhaust state administrative remedies. (Docket No. 39.) In the accompanying Memorandum (Docket No. 38 (the "Prior Opinion")), familiarity with which is presumed, the court outlined the details of the allegations in this action, as well as the procedural history up to that point in time. Therefore, a full recitation of this information will not be repeated herein.

I.      **The Prior Opinion and the Amended Complaint**

Briefly, the Prior Opinion explained that administrative exhaustion is generally required prior to bringing suit in federal court for claims that arise from the alleged denial of the free appropriate public education ("FAPE") guaranteed by the IDEA. In discussing this general administrative exhaustion requirement, the Prior Opinion cited the Sixth Circuit case *Fry v. Napoleon County Schools*, 788 F.3d 622 (6th Cir. 2015) (the "Sixth Circuit *Fry* Opinion"). As noted in the Prior Opinion, the Sixth Circuit *Fry* Opinion explains that the exhaustion requirement stems from the efficacy of having a student's individualized education plan ("IEP") reviewed first at the local level. (Docket No. 38, pp. 17-18.) The Prior Opinion then held that the instant action meets the narrow exception to the exhaustion requirement – outlined in *Donoho ex rel. Kemp v. Smith County Board of Education,* 21 F. App'x 293 (6th Cir. 2001) – made for cases where such exhaustion would be futile. The Prior Opinion also cited the Second

Circuit case *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 114-15 (2d Cir. 2004), which held that administrative exhaustion is futile and should not be required where an action challenges systemic practices by the defendant that relate to the provision of a FAPE to all special education students, rather than challenging the content or implementation of any one student's IEP. The Prior Opinion did not, however, cite to the Sixth Circuit *Fry* Opinion with respect to the futility exception to the exhaustion requirement (nor is that exception discussed in the Sixth Circuit *Fry* Opinion (*see* 788 F.3d 622)).

The Prior Opinion ultimately held that exhaustion would be futile in this action because the plaintiffs have sufficiently alleged a systemic problem that reverberates throughout the Knox County school system and has been un-mitigated – if not encouraged – by the TDOE. The Prior Opinion further noted three primary factors that cut against requiring administrative exhaustion here: 1) it would be inefficient to address the issues in this action by looking at individual instances of isolation and restraint on a piecemeal basis, 2) requiring administrative exhaustion through the TDOE would overlook the allegations of misconduct by the TDOE itself, and 3) the purpose of the administrative exhaustion requirement – to allow local level review of IEPs by the parties most familiar with a student's needs – is not relevant here, where the dispute is not about the IEPs of the individual plaintiffs, but about system-wide practices.

Finally, the Prior Opinion directed the plaintiffs to file an amended complaint for the sole purpose of adding the Tennessee State Board of Education (the "TN Board") and the Tennessee Advisory Council for the Education of Students with Disabilities (the "Council") as defendants to the action. This was in response to some questions raised in the TDOE's briefing about which state educational agencies are liable for the misconduct alleged here, and the plaintiffs' express request to add these additional entities as parties.

On July, 15, 2016, in keeping with the Prior Opinion, the plaintiffs filed the Amended

Complaint, adding as defendants the TN Board and the Council.  (Docket No. 41.)  Other than

adding a description of these additional defendants and adding the names of these defendants to

some of the specific factual allegations that had previously named only the TDOE, the Amended

Complaint is nearly identical to the initial Complaint filed in this action and considered in the

Prior Opinion.

On July 27, 2016, the Knox Defendants filed an answer to the Amended Complaint.

(Docket No. 44.)

On December 15, 2016, the parties collectively filed a proposed Order of Dismissal to

dismiss with prejudice all claims against the Council, on the grounds that it is not a true party in

interest to this action (Docket No. 68), and this proposed Order was entered by the court the

following day (Docket No. 71).

## II.     The Motion to Strike

Also on December 15, 2016, the Knox Defendants filed a Motion to Strike (Docket No.

69), along with a Memorandum in support (Docket No. 70), seeking to strike paragraphs 22

through 24 from the Amended Complaint on the grounds that the allegations therein are untrue

and are offered only for inflammatory purposes.  Paragraphs 22 through 24 of the Amended

Complaint read as follows:

> In the last two years, S.T. has suffered numerous unnecessary isolations,
> restraints, or abuses.  In the 2014-2015 school year, while at Amherst Elementary
> School in Knox County for third grade, S.T. was placed in a "contained"
> classroom with other children with disabilities.  There, an aggressive teacher
> engaged in numerous inappropriate restraints and isolations and abuse and did
> cause S.T. injury.  Although notice was not given to S.T.'s parents, they heard
> from S.T. himself.  By looking at Facebook, they discovered the teacher to have
> publicly written: "Another f***ed up day in special ed."  The parents reported this
> to Knox County Schools but no disciplinary action was taken or made known to
> the parents.  Nor was additional training about de-escalation techniques or proper

positive behavior interventions undertaken.

(Docket No. 41 ¶¶ 22-24.)  This exact language was also present in the initial Complaint filed in this action.  (Docket No. 1, ¶¶ 20-22.)

To support their Motion to Strike, the Knox Defendants attach the Affidavit of Micah Hagood, who was plaintiff S.T.'s third grade teacher and is apparently the teacher referenced in the Amended Complaint as having posted the comment on Facebook quoted above.  (Docket No. 70-3.)  In his affidavit, Mr. Hagood denies having personally restrained or isolated S.T. but acknowledges that other teachers who were members of a Crisis Team at S.T.'s school did so during the time that S.T. was in Mr. Hagood's class.  Mr. Hagood also generally denies abusing S.T., causing him injury, or making any social media postings that expressly named or concerned S.T.  Mr. Hagood admits, however, that he did post the language quoted above, though he states that the post was made on Twitter rather than Facebook.  Also, while Mr. Hagood admits that this post was made during the school year when S.T. was a student in his class, he states that the post referenced a September 2014 incident involving another student that did not concern S.T. in any way and that the post was intended to be viewed only by Mr. Hagood's family and friends, not publicly.  Mr. Hagood also recounts that S.T.'s parents brought this posting to the attention of the school where Mr. Hagood was employed in March of 2015 and that, as a result, Mr. Hagood was disciplined for inappropriate use of social media, and his contract was not renewed for the following school year.

Documentation of disciplinary action by S.T.'s school against Mr. Hagood is attached to the Motion to Strike as well, and it shows that Mr. Hagood was admonished about the proper use of social media (though there is nothing in this documentation about any other disciplinary action taken, nor does this documentation explain or reference Mr. Hagood's non-renewal for the

following school year).  (Docket No. 70-7.)  The Knox Defendants also attach to the Motion to

Strike another document that purports to confirm that the social media post in question was made

on a day when S.T. did not have any recorded behavioral issues at school.  (Docket Nos. 70-5.)

Also attached is an entirely separate social media posting that the Knox Defendants claim was

also discussed by the parties in connection with Mr. Hagoood's use of social media, but which is

not referenced in the Amended Complaint.  (Docket No. 70-4.)  Finally, the Knox Defendants

attach an email exchange between their counsel and counsel for the plaintiffs, in which the

plaintiffs' counsel admits that the posting quoted in the Amended Complaint was made on

Twitter rather than Facebook.[1]

On December 22, 2016, the plaintiffs filed a Response in opposition to the Motion to

Strike.  (Docket No. 75.)

III.    **The Rule 12(b)(1) Motion to Dismiss the Amended Complaint**

On January 3, 2017, the Knox Defendants filed a Motion to Dismiss for Lack of Rule

12(b)(1) Subject Matter Jurisdiction (Docket No. 78), along with a Memorandum in support

(Docket No. 77), once again arguing – among other things – that the plaintiffs should have been

required to administratively exhaust their claims.  This argument was already rejected in the

Prior Opinion denying the Knox Defendants' earlier 12(b)(6) motion on the same grounds but,

this time, the Knox Defendants frame the argument as a basis to challenge the court's subject

matter jurisdiction over this action under Rule 12(b)(1).  Attached to the Motion to Dismiss is the

---

[1] The email contains a photo of the posting.  The Knox Defendants assert that, when enlarged, it
is clear that the date on the posting corresponds to the September 2014 incident involving a
student other than S.T. that Mr. Hagood references in his affidavit, rather than the date
approximately six months later when S.T.'s parents complained about the posting to the school.
The date of the posting is not viewable from the document in the record, but the court finds this
entire discussion to be irrelevant, for the reasons discussed more fully in the subsequent analysis
section.

Affidavit of Honorable Ann Johnson (Retired), a former Administrative Law Judge for the Tennessee Department of State, which discusses the qualifications and training of administrative law judges in Tennessee, provides some details about the types of cases they handle, and expresses the opinion that they are equipped to handle, and regularly do handle, claims brought under the IDEA, including those that pose large-scale systemic challenges. (Docket No. 77-1.) On January 30, 2017, the plaintiffs filed a Response in opposition to the Motion to Dismiss (Docket No. 79) and, on February 14, 2017, the Knox Defendants filed a Reply (Docket No. 81).

On February 22, 2017, the United States Supreme Court vacated and remanded the Sixth Circuit *Fry* Opinion that was cited by the court in the Prior Opinion to illustrate the basic exhaustion requirement for FAPE-related claims. *Fry v. Napoleon Cty. Schs.*, 137 S.Ct. 743 (2017) ("Supreme Court *Fry* Opinion"). On February 28, 2017, with leave of court, the plaintiffs filed a Memorandum of Supplemental Authority discussing the Supreme Court *Fry* Opinion. (Docket No. 84.)

On March 13, 2017, the Knox Defendants filed a Motion for Leave to File a Supplemental Memorandum of Law, also with respect to the Supreme Court *Fry* Opinion. In the body of the attached proposed Supplemental Memorandum, the Knox Defendants argue that, in light of the Supreme Court *Fry* Opinion, the court should reconsider the Prior Opinion's denial of their Rule 12(b)(6) Motion to Dismiss, though they have made no such official motion (and, in any event, such a motion would be redundant of the pending Motion to Dismiss for Lack of Subject Matter Jurisdiction, which is based, in part, on the same exhaustion issue that they argue is impacted by the Supreme Court *Fry* Opinion).

On March 14, 2017, the plaintiffs filed a Response to the Motion for Leave to File a Supplemental Memorandum of law, indicating that they are not opposed to the filing of a

memorandum to discuss the Supreme Court *Fry* Opinion but that they do oppose the request that the court reconsider the Prior Opinion. (Docket No. 87.) On March 16, 2017, the court granted the Knox Defendants' Motion for Leave to file a Supplemental Memorandum of Law (Docket No. 89) and the Knox Defendants filed their Supplemental Memorandum on the same day (Docket No. 90).

## MOTION TO STRIKE

Motions to strike are governed by Rule 12(f), which states that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Sixth Circuit has held that striking factual material from a pleading is a remedy to be used "sparingly by the courts" and, thus, only when the material to be stricken "has no possible relation to the controversy." *Parlak v. U.S. Immigration and Customs Enforcement*, No. 05-2003, 2006 WL 3634385 *1 (6th Cir. Apr. 27, 2006) (quoting *Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953)). Rule 12(f) also provides that a motion to strike by a party must be made prior to the party's responding to the pleading, or within 21 days of the pleading being served if no response is allowed, though a court can act on its own, without a motion by a party, to strike material from a pleading where warranted.

The Motion to Strike is clearly untimely. Not only did the Knox Defendants neglect to move to strike the language in question from the initial Complaint, despite bringing a different Rule 12 motion as to that pleading, but they also did not file the instant Motion to Strike until months after the Amended Complaint was filed and they had filed an Answer thereto. They now attempt to justify this untimeliness by claiming that they have uncovered during the discovery process the fact that the allegations in the challenged paragraphs of the Amended Complaint are untrue. They further argue that the untimeliness of the motion should not preclude the court

from exercising its own discretion, under Rule 12(f), to strike the challenged language from the Amended Complaint. Ultimately, the court need not reach the question of whether the motion is properly before the court at this time because the court finds that the motion is anyway wholly without merit, and, for the reasons discussed below, the court will neither grant the Motion to Strike nor exercise its own discretion to strike the challenged language from the record.

## I.  Allegations That Paragraphs 22-24 Are Knowingly False

As an initial matter, the Motion to Strike, along with the attached evidence, appears to be an attempt to force the court to resolve a factual dispute at this early stage of the litigation, before discovery has even been completed. The Knox Defendants argue that the record clearly shows that the allegations in paragraphs 22 through 24 of the Amended Complaint are false, and they suggest that the plaintiffs made these knowingly false allegations in an intentional effort to disparage them. According to the Knox Defendants, it is the very falsity of the allegations that renders them irrelevant and scandalous and, therefore, subject to being stricken. In particular, the Knox Defendants state that these allegations will unfairly prejudice the court against them because they are "manifestly untrue, impertinent, and scandalous" and "are clearly offered for the purpose of inflaming the sensibilities of this Court against [them]." (Docket No. 69, p. 1.) The record, however, does not support a definitive finding that the allegations in paragraphs 22 through 24 are false, let alone a finding that the plaintiffs intentionally included them in the Amended Complaint despite knowing of their falsity.

In the paragraphs in question, the plaintiffs simply allege that S.T. was subjected to numerous inappropriate isolations and restraints while he was a student in third grade at a Knox County school, that a teacher of S.T.'s that year posted the comment "another f***ed up day in special ed" on social media, that S.T.'s parents complained to the school about these issues, and

that the school responded inadequately. The evidence the Knox Defendants have placed in the record actually affirms, rather than disproves, the truth of at least some of these allegations. According to the Knox Defendants' own proffered evidence, 1) S.T. was subjected to at least some isolations and restraints during the course of his third grade school year in a Knox County school (if not by his primary classroom teacher, Mr. Hagood, then by other members of a school crisis team), 2) Mr. Hagood posted the comment quoted in the Amended Complaint on social media during that school year, 3) S.T.'s parents complained to the school about the comment and other issues, and 4) Mr. Hagood was disciplined solely with respect to his use of social media. The remaining factual questions – whether the isolations and restraints imposed on S.T. were improper or unnecessary, whether the school's response was adequate, and whether the social media posting evidenced a dysfunctional environment in Knox County's special education classrooms – are all open questions that cannot, and should not, be resolved at this time.

Mr. Hagood's denial of his own personal involvement in restraining or isolating S.T., as well as his denial that he ever abused or injured S.T., reveals only Mr. Hagood's account of the circumstances and does not constitute a final determination of the truth. Moreover, the Amended Complaint does not name Mr. Hagood, specifically, as the teacher who carried out isolations and restraints on S.T. and, thus, the allegations about the isolations and restraints that S.T. endured are not even necessarily inconsistent with Mr. Hagood's statements. As for the timing of Mr. Hagood's social media posting, whether the post referred to S.T. or to another student, and whether Mr. Hagood intended the post to be publicly viewable, these matters are not only unresolvable factual questions at this time, but also do not call into question the veracity of the allegations in the Amended Complaint, which simply state that the comment was posted by S.T.'s teacher during the school year when S.T. was in Mr. Hagood's class. The Amended

Complaint does not reference any particular date on which this posting was made, nor does it limit the allegations about S.T.'s negative treatment in school that year to any particular date. Moreover, the Amended Complaint centers on allegations of system-wide misconduct and, so, the fact that the post might have been intended to be about a student other than S.T. neither undercuts the allegation that the post reflected negatively on S.T.'s classroom environment, nor does it render the post irrelevant to the larger thread of allegations giving rise to this action.[2]

Finally, the evidence showing that Mr. Hagood was disciplined for his social media use does not show that he, or anyone else, received any discipline for any of the other issues that S.T.'s parents were concerned about – namely the overall environment in the special education classrooms surrounding the use of restraints and isolations and the alleged denial of a FAPE to S.T. and other special needs students. This evidence, therefore, does not negate the plaintiffs' allegations that the issues raised by S.T.'s parents were inadequately dealt with by the defendants. Specifically, the fact that Mr. Hagood was disciplined for his use of social media does not discredit the allegations that other types of discipline were not issued and that no additional training on the use of isolation and restraint was offered. Nor does any of the evidence disprove that the plaintiffs were unaware that any discipline whatsoever had been meted out.

---

[2] The Knox Defendants frame the allegations related to the social media post as the product of a scheme by S.T.'s parents to uncover something unflattering that Mr. Hagood posted online, frame it as though it were about S.T. when it clearly was not, report the post to the Knox Defendants in order to have Mr. Hagood unfairly disciplined, and then use the incident to improperly support the plaintiffs' legal claims. Even if all of this were true, – a determination that the court cannot make at this time with an undeveloped record – this would not undermine the veracity or the relevance of the actual allegations in the Amended Complaint. The allegations would still stand to support a claim that S.T. was in an environment that was not serving his needs, including having a teacher who posted negative comments about the classroom on social media, and that the school failed to respond to S.T.'s parents' complaints in an adequate manner.

The only allegation in the Amended Complaint that appears from the record to be clearly false, as admitted by the plaintiffs' own counsel in an email (Docket No. 70-6) and by the plaintiffs in their responsive briefing (Docket No. 75, p. 3), is the allegation that the social media posting was made on Facebook, when it was really posted to Twitter. The court finds this to be a wholly immaterial and harmless error that has no bearing on the substance of the allegations in the Amended Complaint and the issues raised in this action. It will, therefore, not be considered as a basis to strike any portion of the Amended Complaint.

## II.     Argument That Paragraphs 22-24 Should Be Stricken

More importantly, even if the allegations in paragraphs 22 through 24 of the Amended Complaint are ultimately proven to be false, this is not grounds to strike a pleading, absent a showing that the allegations meet the Rule 12(f) criteria of being redundant, immaterial, or scandalous. The Knox Defendants argue that the allegations are irrelevant simply because they are untrue and scandalous because the plaintiffs knew them to be patently untrue at the time the Amended Complaint was filed. The Knox Defendants are not only unable to prove that to be the case, but they cite no authority for the proposition that the remedy for a plaintiff's knowingly making false allegations in a pleading is to strike the allegations. The entire purpose of the litigation process, including discovery, is for the trier of fact to ultimately determine the facts based on a thorough investigation and presentation by the parties. By their very nature, pleadings will often contain allegations that are ultimately found to be untrue, but this does not render the pleadings improper or subject to being stricken at the beginning of the litigation process. Otherwise, as the plaintiffs point out, courts would be overwhelmed with motions to strike allegations whenever they are factually denied by defendants.

Aside from the assertion that paragraphs 22 through 24 of the Amended Complaint were pled despite being known to be untrue, there is no other basis to find that they are irrelevant or scandalous. In fact, the allegations in paragraphs 22 through 24 not only highlight the particular injuries S.T. allegedly suffered as a result of the special education environment provided by the defendants, but also provide an illustration of how the alleged policies and practices being challenged in this action played out on an individual level. These allegations are, therefore, highly relevant. The Knox Defendants cite *Johnson v. County of Macomb*, No. 08-10108, 2008 WL 2064968, * 1 (E.D. Mich. 2008), for the proposition that scandalous language should being stricken from a pleading. The district court in *Johnson* noted that language can be stricken as scandalous when it detracts from the dignity of the court or unnecessarily reflects on the moral character of an individual, citing as an example a pleading that referred to an opposing counsel as racist. The *Johnson* court then struck allegations that a representative of a defendant organization had a relative with ties to organized crime, an allegation that was wholly unrelated to the claims at issue in the action (which were that the defendant organization had infringed on the plaintiff's religious freedoms).

The Amended Complaint is plainly distinguishable from the pleadings discussed in *Johnson*. While the language in Mr. Hagood's social media posting that is quoted in the Amended Complaint may be considered inappropriate, it is language that is attributed to Mr. Hagood rather than the plaintiffs' own wording. Any inappropriateness of the language, therefore, cannot itself be a reason to strike from the pleadings the allegations that the comment was made but, instead, supports the significance of the quote. While alleging the fact that a Knox County teacher posted this comment on social media may, in fact, cast the Knox Defendants in an unflattering light, or reflect poorly on the character of Mr. Hagood, including

this fact in the Amended Complaint is not an unfettered attack by the plaintiffs on the Knox Defendants. The plaintiffs are simply relaying their version of the material events giving rise to this action. The Amended Complaint does not contain any editorializing about the social media comment or the other alleged misconduct referenced in the challenged paragraphs that would be akin to the name-calling or irrelevant character assaults referenced in *Johnson*. In fact, Mr. Hagood is not even named in the Amended Complaint but, to the extent the allegation still constitutes an assault on his character, it is neither unnecessary nor irrelevant for the reasons discussed above. The court is not prejudiced against the Knox Defendants because of these allegations, just as it is not prejudiced against any defendant based on allegations of wrongdoing made in a complaint. The court does not ever, and will not here, issue any dispositive ruling against a defendant based on unproven allegations. It will ultimately be the fully developed record of facts, along with any necessary credibility determinations, that will control the outcome of this action, not the allegations in the pleadings.[3]

For these reasons, the court finds that the Knox Defendants have made no showing that the language at issue warrants being stricken from the record. Accordingly, the court will not strike paragraphs 22 through 24 from the Amended Complaint, and the Motion to Strike will be denied.

---

[3] The Knox Defendants argue that the court was improperly influenced in issuing the Prior Opinion by the allegations challenged here, citing the fact that the Prior Opinion refers to these allegations in its factual background section. While they acknowledge that the court was properly bound to assume the alleged facts to be true for purposes of considering the 12(b)(6) motion, the Knox Defendants argue that it was prejudicial to consider these particular facts which were pled despite their obvious falsity. For all of the reasons discussed above, the court finds that there is no obvious falsity to these allegations and no prejudicial error in the court's citing to them in the Prior Opinion. In fact, the court's reference to these allegations in the Prior Opinion further affirms the court's finding that these allegations are relevant to the plaintiffs' claims.

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND REQUEST TO RECONSIDER THE PRIOR OPINION IN LIGHT OF THE SUPREME COURT *FRY* OPINION**

The court begins by noting that the Knox Defendants are plainly attempting to get a second bite at dismissing this action, where the court has already held that dismissal is not warranted. The Amended Complaint does not make any substantive changes to the pleadings, with respect to allegations or claims against the Knox Defendants, from the initial Complaint that was before the court when it issued the Prior Opinion. Moreover, the Knox Defendants had already long since filed an Answer to the Amended Complaint at the time they filed the currently pending Motion to Dismiss. While motions to dismiss for lack of jurisdiction may be raised at any time (*see* Fed. R. Civ. P. 12(h)(3)), the Knox Defendants have clearly taken great pains to frame their currently pending motion as a jurisdictional one when, for the reasons discussed more fully below, there is no real basis for such a jurisdictional challenge. Finally, the Supreme Court *Fry* Opinion is only tangentially related to the issues currently before the court and provides no basis for either reconsidering the Prior Opinion or otherwise dismissing this action. Nevertheless, the court will address the arguments raised and, once again, explain why dismissal is not appropriate, regardless of the procedural basis on which it is sought.

I.      **Legal Standard for Rule 12(b)(1) Motion**[4]

"Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Genetek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests subject matter jurisdiction *factually*, the court must weigh the evidence in order to determine whether it has the power to hear the case, without

---

[4] The court does not herein recount the legal standard for a Rule 12(b)(6) motion, as it is outlined in the Prior Opinion, though the court will discuss why there is no basis to vacate the Prior Opinion.

presuming the challenged allegations in the complaint to be true. *Id.*; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When the facts are disputed in this way, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary," without converting the motion into one for summary judgment. *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom. Myers v. United States*, 17 F.3d 890 (6th Cir. 1994); *see also Genetek*, 491 F.3d at 330. It is then the plaintiff's burden to show that jurisdiction is appropriate. *DLX*, 381 F.3d at 511. If a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, to the contrary, the plaintiff's burden is "not onerous," and the plaintiff need only demonstrate that the complaint alleges a "substantial" federal claim, meaning that prior decisions do not inescapably render the claim frivolous. *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true. *Genetek*, 491 F.3d at 330; *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999). Thus, "the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248.

## II.   Analysis

The Knox Defendants argue that they are making a factual challenge to the court's subject matter jurisdiction over this action and that, as such, the court must review the factual evidence in the record, and the plaintiffs bear the burden of proving that jurisdiction is proper. While the Knox Defendants are correct that the court must weigh factual evidence when a challenge is made to a fact that is necessary to establish the court's subject matter jurisdiction, they make no such factual challenge here, as discussed more fully below. They do, however,

make several facial challenges to the court's subject matter jurisdiction and also argue that the Supreme Court *Fry* Opinion warrants revisiting the issue of administrative exhaustion. The court will address each of these arguments in turn.

### A. Purported Factual Challenge to the Court's Subject Matter Jurisdiction

The only factual allegation in the Amended Complaint that the Knox Defendants challenge is a statement that the administrative courts available in Tennessee to hear IDEA claims are not equipped to handle a wide-scale systemic challenge like this one. That allegation, however, is wholly immaterial to this action and is not being considered by the court in rendering its determination as to subject matter jurisdiction. Even assuming that the evidence in the record confirms that the plaintiffs' allegations in this regard are untrue and that the administrative forum is capable of hearing this action, these facts would not undermine this court's jurisdiction. Nor do they weigh against the court's finding that administrative exhaustion is not required here.[5]

If the court lacked jurisdiction over this action, it would be unable to proceed regardless of the abilities or efficiencies of another forum where jurisdiction is proper.[6] Likewise, the court's jurisdiction is not called into question by the concurrent jurisdiction of the administrative forum. Therefore, the Knox Defendants' evidence – the statements of Honorable Ann Johnson (Retired) as to the qualifications of the administrative forum to hear this case and the history of hearing similar actions in that forum – is wholly irrelevant. Accordingly, there is no burden shifting, and the plaintiffs need not respond to this evidence or meet any other heightened burden of proof on this factual issue in order to establish that jurisdiction is proper here.

---

[5] The plaintiffs' allegations regarding the capabilities of the administrative forum were not considered by the court in issuing the Prior Opinion, which held that administrative exhaustion was not required, just as they will not be considered herein.

[6] This is not a motion to transfer venue, where the relative efficiency of trying a case in two different forums which each have proper jurisdiction is weighed.

### B. Facial Challenges to the Court's Subject Matter Jurisdiction

The remainder of the Knox Defendants' subject matter jurisdiction argument challenges the plaintiffs' legal assertion that federal jurisdiction is appropriate over their claims. This argument is, at best, a facial attack on the court's subject matter jurisdiction in this action, and the court need only consider the *legal* question raised, while presuming the relevant factual allegations in the Amended Complaint to be true. In raising this facial challenge to the court's jurisdiction, the Knox Defendants argue, first, that all of the plaintiffs' claims are really a single claim for violation of the Tennessee Special Education Behavior Support Act, Tenn. Code Ann. § 49-10-1304 *et seq.* ("SEBSA"), disguised as federal claims. They then argue that, accordingly, the action must be dismissed because the SEBSA does not create a private right of action (and certainly not one over which the federal district court would have subject matter jurisdiction, since the SEBSA is a Tennessee statute).

While the Amended Complaint does cite to the SEBSA as providing regulations for the use of isolations and restraint in public school special education classrooms and alleges that these regulations were violated by the defendants, the court explained in the Prior Opinion that these allegations serve only to support the federal claims at issue and there is no direct claim for violation of the SEBSA before the court in this action. (Docket No. 38, p. 6.) Moreover, as discussed in the Prior Opinion (Docket No. 38, p. 15, n. 4), the Sixth Circuit has expressly held that the IDEA incorporates liability for upholding state regulations that extend the obligations of local school districts beyond those obligations expressly provided in the IDEA itself. *See Doe by and through Doe v. Bd. of Educ. of Tullahoma City Schs.*, 9 F.3d 455 (6th Cir. 1993). Accordingly, a violation of the SEBSA may properly give rise to a violation of the IDEA. The fact that the SEBSA does not create a private right of action is, thus, wholly irrelevant to this

action, and it neither provides grounds to dismiss the plaintiffs' sufficiently pled federal law claims nor to decline the exercise of federal jurisdiction. The question of subject matter jurisdiction must, then, be analyzed only with respect to the plaintiffs' IDEA, Section 504, and Title II claims.

The challenge to the court's jurisdiction over the plaintiffs' federal claims is clearly without merit, as federal courts have original subject matter jurisdiction over all claims that arise under federal statutes. 28 U.S.C. § 1331. Moreover, as the plaintiffs point out, the court's jurisdiction over IDEA claims is expressly provided for by the statute. 20 U.S.C § 1415(b)(i)(3)(A). In fact, the cases discussed in the prior opinion regarding the administrative exhaustion requirement – *J.S.* and the Sixth Circuit *Fry* Opinion – appear to begin with the basic premise that federal courts have subject matter jurisdiction over these types of claims and that the only question is whether the exhaustion of administrative remedies must take place before this jurisdiction can be exercised and the case can be heard. *See generally J.S.*, 386 F.3d 107; *Fry*, 788 F.3d 622.

### C. Argument That The Court Lacks Subject Matter Jurisdiction Due to the Plaintiffs' Failure to Exhaust Administrative Remedies

Next, the Knox Defendants argue that the administrative forum in Tennessee has proper jurisdiction over this sort of action and that, therefore, the federal district court does not. They cite 20 U.S.C. § 1415(1), which is the section of the IDEA that provides for the administrative exhaustion requirement. While the Knox Defendants correctly point out that this provision confers jurisdiction on the administrative forum, they do not – and cannot – explain how this provision in any way undermines federal court jurisdiction over IDEA claims. There is nothing in this provision, or elsewhere in the IDEA, that confers *exclusive* jurisdiction on the administrative forum or otherwise precludes jurisdiction in federal court. If anything, this

provision reinforces the federal court's jurisdiction by explaining that there is a threshold requirement that must be met before such jurisdiction should be exercised. The Knox Defendants' arguments related to the administrative forum's jurisdiction, then, are relevant only to the extent that the Knox Defendants renew their argument that administrative exhaustion should be required before this action can proceed.

It is not entirely clear whether the question of exhaustion is a jurisdictional one, and there appears to be a split among courts on this issue that the Sixth Circuit has not conclusively addressed. *See Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 430-32 (6th Cir. 2016).[7] The court need not resolve this question, however, because, where exhaustion is *not* required – as it is not in this instance – then any challenge based on failure to exhaust cannot succeed, regardless of whether the exhaustion requirement is a jurisdictional threshold when it *does* apply.

The court will not fully rehash its entire basis for finding that exhaustion is not required here, which is discussed in detail in the Prior Opinion. The court notes, however, that the additional legal arguments raised by the Knox Defendants in this round of briefing as to why exhaustion should be required are without merit. The Knox Defendants cite to *Douglass v. District of Columbia*, 750 F. Supp. 2d 54 (D.D.C. 2010), as an example of a similar action having been dismissed by a federal district court for failure to exhaust administrative remedies.[8] Notably, the *Douglass* decision does not reject the existence of an exception to the exhaustion requirement for FAPE-related claims in instances where exhaustion would be futile. Rather, the

---

[7] As plaintiffs have pointed out, the Sixth Circuit has held that exhaustion is not jurisdictional in another non-IDEA context. *See Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

[8] The district court in *Douglass* held that exhaustion is jurisdictional and, thus, technically dismissed the action for lack of subject matter jurisdiction. For the reasons discussed above, however, the court finds that this issue is without relevance to this action and considers only the basis on which the district court in *Douglass* found exhaustion to be required.

D.C. District Court simply found that such an exception did not apply given the facts in *Douglass*. *Douglass* involved a challenge to the implementation of a plaintiff student's IEP, where the IEP stated that the plaintiff should have a goal of receiving a high school diploma, but he was placed in special education classes that did not lead to graduation credits. While the complaint suggested that all of the plaintiff's special education classmates were being equally deprived of the opportunity to earn graduation credits, it was not clear that any classmates had also been given IEPs with graduation as a stated goal, or that it would be a feasible component of the special education classes to incorporate the necessary criteria for earning graduation credits. The D.C. District Court ultimately found that the case should not be decided without the development of an administrative record regarding the plaintiff's particular IEP, the options for placement, and the curriculum goals of the classes he was enrolled in.

The instant action is very different from *Douglass*, in that it truly alleges practices that clearly impact the ability of all special education students within Knox County schools to receive a FAPE regardless of their IEPs or other individualized considerations. While the curriculum of the special education classes in the *Douglass* case impacted many students, it clearly did not impact them in the same way. Thus, individualized reviews were necessary, making the administrative exhaustion requirement particularly appropriate. Here, by contrast, the alleged misconduct can be analyzed without any consideration of the plaintiffs' IEPs or the individualized education needs of any particular students. Thus, the fact that exhaustion was required in *Douglass* – an opinion from outside the Sixth Circuit that is not binding on this court – has no bearing on the court's finding that it is not so required here.

**D. Argument That The Supreme Court *Fry* Opinion Warrants Revisiting the Prior Opinion's Holding on Exhaustion**

Finally, the Supreme Court *Fry* Opinion is not material to this action and does not change the analysis from that conducted in the Prior Opinion. In the Prior Opinion, the court cited the Sixth Circuit *Fry* Opinion for the proposition that the IDEA generally requires exhaustion for claims based on the denial of a FAPE. (Docket No. 38, p. 17.) This proposition was not overturned by the Supreme Court *Fry* Opinion. Rather, the Supreme Court *Fry* Opinion held that, given the unique facts in that case, the *gravamen* of the action was not about the denial of a FAPE and, therefore, the general administrative exhaustion requirement did not apply. The Supreme Court *Fry* Opinion explained this to be the case because the challenge in *Fry* was to a plaintiff student having been denied by the defendant school district the right to bring her service dog to school to assist her with the logistics of moving throughout the building. The Supreme Court held that this was not sufficiently connected to the plaintiff's education for the action to be primarily about the denial of a FAPE (though the Supreme Court suggested that the issue could impact the plaintiff's ability to access a FAPE and, thus, support an IDEA claim).

To illustrate the difference between a claim that is primarily about the denial of a FAPE and one that is not, the Supreme Court *Fry* Opinion suggested that district courts should consider two questions: 1) could someone in the school building other than a minor student bring a claim under Title II or Section 504 for the same alleged misconduct and 2) could the plaintiff bring a claim against a different public institution other than the school for the misconduct? In *Fry*, those questions could easily be answered in the affirmative: an adult employee or adult guest of the school could equally bring Title II or Section 504 claims if they were not permitted to bring a service dog on the premises to assist them, and the plaintiff could easily bring such a claim against a library or other public institution that she was unable to access due to restrictions on her service animal. Thus, the alleged misconduct was not primarily *educational* in nature but, rather,

was about *access* to a public institution and, therefore, administrative exhaustion was not required.

The court agrees with the Knox Defendants that, in the instant case, the gravamen of the pleadings is primarily about the denial of a FAPE.[9]  The discipline of students is primarily educational in nature and isolations and restraints are considerations for the classroom environment, where students need to have their behavior managed in order to learn effectively. *See Mallory ex. rel. BM v. Knox County School District*, 2006 WL 3484015, at *6, No. 3:06-cv-112 (E.D. TN Nov. 30, 2006) (citing *Moore v. Harriman City Schools*, 1994 WL 18021, No. 92-5572 (6th Cir. Jan. 21, 1994)).  Isolation and restraint techniques are not implemented on adult employees or visitors of the Knox County schools, nor are they implemented on minors such as the plaintiffs in other public institutions.  For this reason, the court finds that the Supreme Court *Fry* opinion changes nothing about the analysis in this instance.  The Prior Opinion began by explaining that administrative exhaustion is generally required for cases arising from the alleged denial of a FAPE, and this premise was affirmed in the Supreme Court *Fry* Opinion.  The fact that the *Fry* case itself was found not to primarily arise from the denial of a FAPE and, therefore, not to require administrative exhaustion, has no bearing on the instant action that is primarily about the alleged denial of a FAPE.  The Prior Opinion held that exhaustion is not required here based on a wholly independent exception to the exhaustion requirement for cases that *are* primarily FAPE-related, but where exhaustion would, nonetheless, be futile.  This exception was

---

[9] In their supplemental briefing regarding the Supreme Court *Fry* opinion, the plaintiffs argue that this is not a FAPE-related action.  The court disagrees with this characterization and finds that the discipline issued to special education students is a part of their educational environment. The plaintiffs mis-cite to the Prior Opinion as holding that this is not a FAPE-related action but, as the Knox Defendants point out, the Prior Opinion said no such thing but, rather, stated that this case is not about a challenge to any student's *IEP*, which it is not.  (Docket No. 38, p. 19.)

not addressed in the Sixth Circuit *Fry* Opinion and was, again, not addressed by the Supreme Court *Fry* Opinion.[10]

Accordingly, there is no basis in the Supreme Court *Fry* Opinion to vacate the Prior Opinion. Nor do any of the arguments raised by the Knox Defendants warrant reaching a different conclusion from the Prior Opinion as to whether exhaustion is required. Accordingly, this action will not be dismissed for failure to exhaust administrative remedies, under Rule 12(b)(1) or Rule 12(b)(6). There is no other basis to find that this court lacks subject matter jurisdiction over these claims that are clearly brought under federal statutes, nor is there any other basis for dismissing this action at this time.

## CONCLUSION

For the foregoing reasons, the Motion to Strike and the Motion to Dismiss for Lack of Subject Matter Jurisdiction will be denied.

An appropriate order will enter.

<br>

ALETA A. TRAUGER
United States District Judge

---

[10] The Knox Defendants attempt to cast the language in the Supreme Court *Fry* Opinion stating that exhaustion is required "when the gravamen of the complaint seeks redress for a school's alleged failure to provide a FAPE" (137 S.Ct. at 755) as suggesting that there are no exceptions to this rule. This is an overly literal reading of the Supreme Court *Fry* Opinion, which is clearly discussing the difference between a FAPE-related claim and a non-FAPE related claim and never references the caselaw on exceptions to the general exhaustion requirement, let alone provides any indication of the intent to overturn these well-established exceptions.